UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOEL ZALVIN,

         Plaintiff,

                    **MEMORANDUM AND ORDER**

  - against -              19-CV-2215 (RRM) (RML)

GENTEX CORPORATION,

         Defendant.
-------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

    On April 16, 2019, plaintiff Joel Zalvin commenced this action against defendant Gentex

Corporation, alleging that Gentex's 2019 definitive proxy statement violated Section 14(a) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and SEC Rule 14a-3(a)(1), 17 C.F.R. §

240.14a–3(a)(1) by failing to state the approximate number of individuals in each class eligible

to participate in the Gentex Corporation 2019 Omnibus Incentive Plan, which was proposed in

the proxy statement.  Approximately one week later, Gentex issued a two-sentence supplemental

proxy statement which rectified this omission.  In May 2019, Zalvin voluntarily dismissed this

action and moved for an award of attorney's fees and expenses pursuant to the "common benefit

doctrine," arguing that this litigation has conferred a substantial benefit on Gentex's

shareholders.  For the reasons set forth below, the Court finds that the litigation did not confer a

substantial benefit and denies Zalvin's motion for attorney's fees.

**BACKGROUND**

    Although the following facts are largely drawn from Zalvin's complaint, they are not in

dispute.  Gentex is a publicly traded corporation, the common stock of which trades on the

NASDAQ stock exchange.  (Compl. (Doc. No. 1) ¶ 8.)  As of March 18, 2019, there were

256,885,095 shares of the common stock outstanding.  (*Id.*)

1

On April 2, 2019, Gentex filed with the Securities and Exchange Commission ("SEC")

and furnished to its shareholders a definitive proxy statement with respect to an annual meeting

scheduled to take place on May 16, 2019.  (*Id.* ¶ 1.)  That proxy statement asked the shareholders

to vote by proxy on four proposals, including a proposal to elect nine directors and "[t]o approve

the Gentex Corporation 2019 Omnibus Incentive Plan" (the "Plan" or "2019 Omnibus Plan").

(*Id.*)  A copy of the Plan was attached to the proxy statement as Appendix B.  In addition, the

proxy statement devoted ten single-spaced pages to a description of the Plan and the three

existing plans – the Employee Stock Option Plan, Second Restricted Stock Plan, and Amended

and Restated Non-Employee Director Stock Option Plan – which the Plan was intended to

replace.  (*Id.*, Ex. 1 (Doc. No. 1-1) at 54–63.)[1]

As part of that description, Gentex included a paragraph entitled "Eligibility for

Participation," which stated:

> Any of our employees, employees of our subsidiaries and non-employee members
> of our Board of Directors are eligible to receive an Award under the 2019
> Omnibus Plan. ISOs, however, may only be granted to employees of the
> Company or as otherwise permitted by law.  Because the 2019 Omnibus Plan
> provides for broad discretion in selecting participants and in making Awards, the
> total number of persons who will participate in the 2019 Omnibus Plan and the
> benefits that will be provided to the participants cannot be determined at this time.

(*Id.*, Ex. 1, at 55.)  Although the section of the proxy statement pertaining to the "Election of

Directors" made it clear that Gentex had nine independent directors, (*id.* at 13), the proxy

statement did not state how many persons were employed by Gentex or its subsidiaries.

However, the proxy statement contained a section entitled "Shares Available for Issuance Under

the 2019 Omnibus  Plan," which immediately followed the paragraph entitled "Eligibility for

Participation" and which stated, among other things:

---

[1] In referencing pages in the proxy statement, the Court uses the page numbers assigned by ECF.

> Subject to adjustment as provided in the 2019 Omnibus Plan, the number of shares of our common stock reserved for issuance under the 2019 Omnibus Plan is 45,000,000 … plus any shares related to Awards (including Full Value Awards) under the 2019 Omnibus Plan that terminate by expiration, forfeiture, cancellation, or otherwise without the issuance of such shares, or are settled in cash in lieu of shares, will be available again for grant under the 2019 Omnibus Plan.

(*Id.*, Ex. 1, at 55–56.)

This Action

On April 16, 2019, Zalvin commenced this action, alleging that Gentex's proxy statement "failed to comply with the disclosure requirements of Schedule 14A promulgated under the Securities Exchange Act of 1934 (the 'Exchange Act'), 17 C.F.R. § 240.14a–101 ('Schedule 14A') …." (Compl. ¶ 2.) Specifically, Zalvin's complaint alleged that the proxy statement did not provide certain information required by Item 10 of Schedule 14A, which provides, in pertinent part, that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, [a proxy statement must] … identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation." (*Id.* ¶¶ 2, 13.) Zalvin acknowledged that the Plan allowed up to 45,000,000 shares of common stock, worth approximately $975 million, to be issued. (*Id.* ¶¶ 17, 19.) However, the complaint alleged that the proxy statement did not "identify how many participants in each class of persons who will be eligible to participate in the Plan may be awarded the additional 45,000,000 shares …." (*Id.* ¶ 17.)

Zalvin's complaint principally requested injunctive relief. It requested a mandatory injunction requiring Gentex to furnish a supplemental proxy statement with the information required by Item 10(a)(1). (*Id.* at 7.) It also requested injunctions prohibiting Gentex from

3

presenting the proposal relating to the Plan at the annual meeting or "certifying or otherwise

accepting any vote cast" in connection with that proposal, unless the supplemental proxy

statement was timely provided to the shareholders.  (*Id.*)  Aside from these injunctions, the only

relief sought in the pleading was an award of "attorney's fees and expenses incurred in bringing

this action and in creating a benefit for all of Gentex's shareholders to the extent that a common

benefit is conferred …."  (*Id.*)

> On April 23, 2019, Gentex filed a supplemental proxy statement, which stated:

> As of February 1, 2019, the Company had 5,707 full-time employees (including
> 178 employees of subsidiaries) and 9 non-employee directors that may be eligible
> to participate in the 2019 Omnibus Plan.  Participation in the 2019 Omnibus Plan,
> however, remains in the discretion of the Board of Directors and the
> Compensation Committee as set forth in the Proxy Statement.

(Supplemental Proxy Statement (Doc. No. 21-5) at 4.)  Elsewhere in that submission, Gentex

stated:

> The approximate numbers of persons who may be eligible to participate in the
> 2019 Omnibus Plan can be determined from [the] description and disclosures
> otherwise available in the Proxy Statement together with the Company's Annual
> Report to Shareholders for the year ended December 31, 2018, delivered
> concurrently with the Proxy Statement.  The Company is providing this
> Supplement to add that information within the Eligibility for Participation
> paragraph on page 43 of the Proxy Statement.  The Company believes, however,
> that the lack of specific reference to those numbers within the Eligibility for
> Participation paragraph would not have been material as to any shareholder's
> decision whether to vote in favor of [the Plan].

(*Id.*)

> On May 6, 2019, Zalvin filed a notice of voluntary dismissal pursuant to Rule

41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  On May 20, 2019, Zalvin moved

"pursuant to Federal Rule of Civil Procedure 54(d)(2) and pursuant to the Court's inherent power

to award attorneys' fees," to recover the expenses of prosecuting this action, including attorney's

fees.  (Notice of Plaintiff's Motion for an Award of Attorney's Fees (Doc. No. 15) at 2.)  In a letter motion dated May 24, 2019, Gentex moved to strike that motion, relying on two district court opinions from the Ninth Circuit which hold that fees cannot be awarded under Rule 54 absent a "judgment," and that a notice or stipulation of dismissal does not constitute a "judgment" as defined in Rule 54(a).  In a memorandum and order dated May 18, 2020, the Court denied that motion, holding that "attorney's fees can be awarded in this case despite the absence of a 'judgment.'"  (Memorandum & Order (Doc. No. 19) at 5.)  However, the Court made it clear that this conclusion did not "mandate an award of fees in this case."  (*Id.*)

The Memorandum and Order referred the motion for attorney's fees to Magistrate Judge Levy.  However, to expedite the resolution of this case, the Court has vacated the reference and now addresses the motion for attorney's fees.

The Motion for Attorney's Fees

In his Memorandum of Law in Support of Plaintiff's Motion for an Award of Attorney's Fees and Expenses ("Zalvin's Memo") (Doc. No. 15-1), Zalvin principally argues that he is entitled to attorney's fees because this action prompted Gentex to comply with the requirements of Schedule 14A.  Zalvin asserts that "Gentex and its shareholders 'benefited from [Plaintiff]'s action … in the deterrent effect which it may be assumed the action will have on the future conduct of [Gentex] management.'"  (Zalvin's Memo at 13 (quoting *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975)) (alterations in Zalvin's Memo).  Zalvin also argues that this action rendered "'a service to the [company] by vindicating the statutory policy against' securities law violations."  *Id.* (quoting *Kopet*, 523 F.2d at 1008) (alterations in Zalvin's Memo).

In its Memorandum of Law in Opposition to Plaintiff's Motion for Fees ("Gentex's Response") (Doc. No. 21), Gentex argues, among other things, that Zalvin does not have

standing to sue because he was not a shareholder of record as of March 18, 2019, and that this

lawsuit did not result in a substantial benefit to Gentex and its shareholders.  In support of the

first of these arguments, Gentex has introduced a declaration of its Corporate Secretary, Scott

Ryan, who states that Zalvin was not a shareholder of record as of March 18, 2019.  (Declaration

of Scott Ryan ("Ryan Declaration") (Doc. No. 21-1) at ¶ 4.)  Ryan acknowledges that Zalvin

might be a beneficial owner of shares which are held in "street name" – that is, in the name of

the brokerage firm through which Zalvin purchased the shares – but states that such a beneficial

owner would not be entitled to vote the shares.  (Id. at ¶ 5.)

 With respect to the second argument, Gentex notes that the proxy statement "included a

complete copy of the [Omnibus] Plan and emphasized that, under the Plan, awards could be

given to (i) employees; and (ii) nonemployee directors of the Company or its subsidiaries."

(Gentex Response at 15.)  Gentex further noted that the proxy statement "specified, in four

places, the number of directors on Gentex's Board – nine – and which ones were not

employees." (*Id.*)   Gentex tacitly conceded that the proxy statement did not contain an

approximation of the number of non-director employees eligible for awards under the Plan, but

noted that the exact number of persons employed by Gentex and its subsidiaries was contained in

Gentex's Annual Report, which was published only two months prior to the proxy statement and

which was referenced in the proxy statement itself.  (*Id.*).

 Zalvin addresses both arguments in his Reply Memorandum of Law in Support of

Plaintiff's Motion for an Award of Attorneys' Fees and Expenses ("Zalvin's Reply") (Doc. No.

22).  First, Zalvin provides a declaration in which he states that he purchased Gentex stock prior

to March 2018 and holds his shares in a "brokerage account."  (Declaration of Joel Zalvin

("Zalvin Declaration") (Doc. No. 22-2) at ¶¶ 2–3.)  Second, Zalvin argues that disclosure of the

number of employees in Gentex's annual report was inadequate because Gentex was soliciting

shareholder approval of a compensation plan.  (Zalvin's Reply at 3–4.)  Zalvin then cites to

various authorities for the proposition that a failure to comply with the requirements of Schedule

14A constitutes a clear violation of securities law.  (*Id.* at 4–5.)  Finally, relying on *Mills v.

Electric Auto-Lite Co.*, 396 U.S. 375 (1970), Zalvin argues that because this action caused

Gentex to supplement its proxy statement, thereby "curing an Exchange Act violation," it

provided a "substantial service" to Gentex and its shareholders by "vindicating the statutory

policy."

## DISCUSSION

I.      Standing

Before addressing the question of whether Zalvin is entitled to attorney's fees, the Court

must first address the question of whether he had standing to bring this action in the first place.

Gentex establishes that Zalvin was not a shareholder of record as of March 18, 2019, but cannot

foreclose the possibility that he holds Gentex shares through his broker.  (*See* Ryan Declaration

at ¶¶ 4–5.)  In a declaration submitted with Zalvin's Reply, Zalvin states that he holds the shares

in a brokerage account, which implies that he owns the shares in "street name."  (Zalvin

Declaration at ¶¶ 2–3.)  Although such a beneficial owner is unable to vote the shares directly,

(Ryan Declaration at ¶ 5), the proxy statement itself provides that a "beneficial owner who wants

to cast a vote directly, rather than have a broker or other nominee do so, can either: become a

registered owner; or ask the broker or nominee to execute a proxy on your behalf."  (Compl., Ex.

1, at 9.)  Since Zalvin could vote his shares by taking one of these ministerial steps, the Court

finds that he has standing.

II.       Attorney's Fees

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "Since the nineteenth century, however, the Supreme Court has recognized an equitable exception to this rule – known as the common fund or common benefit doctrine – that permits litigants or lawyers who recover a common fund for the benefit of persons other than themselves to obtain reasonable attorney's fees …." *In re Zyprexa Prod. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010). This doctrine, which arose from the equitable doctrine of unjust enrichment, recognizes that "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Mills*, 396 U.S. at 392.

The common benefit doctrine "permits a prevailing party to obtain reimbursement of attorneys' fees," even where no fund has been recovered, "'in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class' and where it is possible to spread the costs proportionately among the members of the class." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (quoting *Mills*, 396 U.S. at 393–94). "It is well established that non-monetary benefits, such as promoting fair and informed corporate suffrage, … may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134–35 (2d Cir. 1984) (citing *Mills*, 396 U.S. at 396–97). However, "[i]t is by now also well established that an award of counsel fees is only justified where the derivative action results in a substantial non-monetary benefit to a corporation." *Kaplan v. Rand*, 192 F.3d 60, 69 (2d Cir. 1999) (citing *Mills*, 396 U.S. at 395). As the *Kaplan* Court noted, *Mills* quoted with approval a decision of the Supreme Court of Minnesota which defined "substantial benefit" as "something

8

more than technical in its consequence and ... one that accomplishes a result which corrects or

prevents an abuse which would be prejudicial to the rights and interests of the corporation or

affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills*, 396

U.S. at 396 (quoting *Bosch v. Meeker Coop. Light & Power Ass'n.*, 257 Minn. 362, 366–67

(1960)).  Under this definition, "no fees are available if the only benefit achieved is merely

"technical in its consequence." *Farrar v. Hobby*, 506 U.S. 103, 119 (1992) (O'Connor, J.,

concurring).

The only benefit achieved by this litigation was "technical in its consequence."  The

proxy statement provided to the shareholders stated that all "our employees, employees of our

subsidiaries and non-employee members of our Board of Directors are eligible to receive an

Award under the 2019 Omnibus Plan." (Compl., Ex. 1, at 55.)  That portion of the proxy

statement which described "Eligibility for Participation" in the Plan did not contain an

approximation of the number of employees and non-employee directors, although not only the

number, but the names, of the non-employee directors appeared elsewhere in the proxy

statement.  Rather, the "Eligibility for Participation" section explained: "Because the 2019

Omnibus Plan provides for broad discretion in selecting participants and in making Awards, the

total number of persons who will participate in the 2019 Omnibus Plan and the benefits that will

be provided to the participants cannot be determined at this time."  (*Id.*)

As a result of this litigation, Gentex provided the shareholders with a supplemental proxy

statement which added two sentences to the ten-page description of the Omnibus Plan.  The first

sentence provided the number of employees and non-employee directors as of February 1, 2019:

"5,707 full-time employees (including 178 employees of subsidiaries) and 9 non-employee

directors." (Supplemental Proxy Statement at 4.)  The second sentence reminded the

9

shareholders that although these individual were eligible to participate in the Omnibus Plan, actual "[p]articipation in the 2019 Omnibus Plan, however, remains in the discretion of the Board of Directors and the Compensation Committee as set forth in the Proxy Statement." (*Id.*) Although Gentex provided this supplemental proxy statement to moot this lawsuit, Gentex made it clear in that document that it did not concede that there was a material omission from the proxy statement by stating: "The Company believes, however, that the lack of specific reference to those numbers within the Eligibility for Participation paragraph would not have been material as to any shareholder's decision whether to vote in favor of [the Plan]." (*Id.*)

The Court agrees with Gentex. As used in Item 10 of Schedule 14A, "[t]he term plan … means any plan as defined in paragraph (a)(6)(ii) of Item 402 of Regulation S–K" (§ 229.402(a)(6)(ii) of this chapter). *See* Instruction 1 to Item 10. The definition in 17 C.F.R. § 229.402(a)(6)(ii) covers a broad range of plans, including group life, health, hospitalization, or medical reimbursement plans that discriminate in scope, terms or operation, in favor of executive officers or directors. In some of those plans, the approximate number of participants would be significant to shareholders attempting to determine whether or not to approve the plan. Here, in contrast, the number of employees theoretically eligible for an Award under the Omnibus Plan was not significant because the Plan gave the Board of Directors and the Compensation Committee broad discretion to determine who would actually participate. To be sure, the information as to how many shares of common stock had been reserved for issuance might be significant, since the issuance of these would dilute the shareholder's stake in the company. But the Court does not perceive any reason why a shareholder would care about the number of employees to whom those shares could conceivably be distributed. Accordingly, information as

10

to the number of employees – the only benefit resulting from this lawsuit – was not a "significant benefit" to the shareholders.

Zalvin does not attempt to explain why the number of employees would be significant to a shareholder in deciding whether to approve the Plan.  Rather, Zalvin's Reply argues that any omission of information required by Schedule 14A is, by definition, a material omission and a violation of securities law.  *See* 15 U.S.C. § 78n(a)(1) ("It shall be unlawful for any person, … in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security … registered pursuant to section 78l of this title.")  Zalvin then relies on *Mills* for the proposition that any action which cures "an Exchange Act violation" provided a "substantial service" to shareholders by "vindicating the statutory policy."  (Zalvin Reply at 5.)

This same argument was recently rejected by Judge Komitee in *Cohen v. LyondellBasell Industries N.V.*, No. 19-CV-2622 (EK) (SMG), 2020 WL 5810118 (E.D.N.Y. Sept. 30, 2020), a case virtually identical to this one.  That action, brought by the same law firm which represents Zalvin in this action, alleged the exact same Schedule 14A violation alleged in this action:  a failure to include an approximation of the number of persons eligible for an incentive plan.  After LyondellBasell Industries mooted the action by issuing a supplemental proxy statement, the law firm moved for attorney's fees.  Judge Komitee referred that motion to Magistrate Judge Gold, who recommended that the motion be denied because "the litigation did not confer a substantial benefit" on the shareholders.  *Cohen v. LyondellBasell Indus. N.V.*, No. 19-CV-2622 (EK) (SMG), 2020 WL 5097773, at *4 (E.D.N.Y. June 23, 2020).  The law firm then objected to the report and recommendation, raising the same argument that it raises before this Court.

11

In adopting Magistrate Judge Gold's recommendation that the attorney's fees be denied,

Judge Komitee rejected the law firm's interpretation of *Mills*, stating:

> This argument misses the point of *Mills*, which holds clearly that the "substantial benefit" standard, and not the materiality threshold, is what determines a plaintiff's entitlement to attorneys' fees. *Mills*, 396 U.S. at 396 (shareholder-plaintiff is entitled to recover fees for instituting an action that "results in a substantial benefit to [the] corporation"). The "materiality by definition" test urged by Plaintiff would effectively write *Mills*' "substantial benefit" test out of existence; instead, any action identifying a violation of Schedule 14A's instructions, no matter how "technical," would result in an entitlement to fees. This result would be inconsistent with Mills' admonition that the substantial entitlement "must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.*

*Cohen*, 2020 WL 5810118, at *3. The Court agrees with Judge Komitee.

## CONCLUSION

For the reasons stated above, the Court concludes that this action did not result "in a

substantial non-monetary benefit to a corporation." *Kaplan*, 192 F.3d at 69. The supplemental

proxy statement was merely "technical in its consequence"; it did not accomplish "a result which

corrects or prevents an abuse which would be prejudicial to the rights and interests of the

corporation or affect the enjoyment or protection of an essential right to the stockholder's

interest." *See Mills*, 396 U.S. at 396. Accordingly, attorney's fees are not warranted under the

common benefit doctrine and Zalvin's motion for an award of attorney's fees and expenses is

denied.

SO ORDERED.

Dated:   Brooklyn, New York
         September 30, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge

12